ELIZABETH FITZPATRICK AND MICHAEL FITZPATRICK v. JAMES FITZPATRICK.

*Bill to cancel deed—Undue influence—Agreement for support.*

In this case a decree setting aside certain deeds executed by a father and mother to their son, in consideration of their life-support by the son, is reversed, and the mother (the father being dead) is given the exclusive use of the homestead for life, and the son is to pay her $20 per month for her support, which is to be a first lien on the land conveyed to him which he has not conveyed away, and after the mother's death the title is to be confirmed in the son as an absolute estate.

Appeal from Kent. (Grove, J.) Argued April 5, 1892. Decided April 22, 1892.

Bill to set aside certain deeds. Defendant appeals. Decree reversed, and one entered according to the opinion, in which the facts are stated.

*Henry J. Felker,* for complainants, contended:

1. The decision of the court below is fully sustained by the doctrine as laid down in 2 Pom. Eq. Jur. 432, 467, and in *Seeley v. Price,* 14 Mich. 541; *Wartemberg v. Spiegel,* 31 Id.

400; *Jacox v. Jacox*, 40 Id. 473; *Bowe v. Bowe*, 42 Id. 195; *Duncombe v. Richards*, 46 Id. 166.

*Thompson, Temple & McCormick,* for defendant, contended:

1. This case is similar to *Arnold v. Whitcomb*, 83 Mich. 19; the only distinction being that in the case cited a life-estate was granted, while in this there was a condition that could be enforced at law for the life-support of the grantors, or either of them, which, from the weight of authority, is a condition subsequent; citing *Blum v. Bush*, 86 Mich. 206; *Homer v. Railway Co.*, 38 Wis. 165; *Leonard v. Smith*, 80 Iowa, 194.

2. Where, in cases of this kind, the defendant has done all that is required of him to do from time to time, the courts will not set aside the transfers; citing *Blum v. Bush*, 86 Mich. 206; *Ladu v. Ladu*, 84 Id. 469; *Marshall v. Marshall*, 75 Iowa, 132; *Leonard v. Smith*, 80 Id. 194.

LONG, J. This bill was filed to set aside two deeds given by James FitzPatrick, Sr., in his life-time, and his wife, Elizabeth. Michael and James are sons. The deeds were made March 4, 1890.

The first deed conveys lots 3, 9, 10, 11, 12, 13, 14, and 15, of FitzPatrick's addition to the city of Grand Rapids, to James FitzPatrick. The consideration expressed is the sum of one dollar; and it is also recited therein that it is given upon the express understanding and agreement that James is to take care of his father and mother as long as they both shall live, and give both of them a suitable maintenance and support, and provide them with all the necessaries of life, and give them both his personal care, if they need it, so long as they live. It is also stipulated in the deed that the lands were not to be sold or incumbered in any manner unless the first parties signed the conveyance. It is also stipulated therein that the parties are to be supported and taken care of in the house on lot 3, if they so direct, and to

be taken as good care of, and provided for as well, as they have been for the last year, by the second party and his wife. The other deed conveys lots 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, and 29 of the same addition, also to James FitzPatrick. The consideration expressed in this deed is the sum of one dollar. No stipulation for support is contained in it. It is shown, however, and it is not much in dispute, that the understanding was, at the time the deed was given, that the parents were to be supported by James as provided in the other deed; that this was the inducement which led to the giving of the two deeds.

An arrangement was made between the parties that defendant, James, who was married and living at St. Johns, this State, should sell out his business there, and move to Grand Rapids, into the house with his father and mother, and take care of them. This he did, and the parties seem to have lived amicably together during the life-time of James, Sr., who died June 28, 1890, about four months after the deeds were given. It is shown that during this time James treated his father and mother with great kindness, and made the last days of his father as peaceful as a dutiful and loving son well could. After the father died, disputes seem to have arisen between James' wife and his mother; and the latter charges that she was left alone in the house for several days at a time without sufficient food, with no one to look after her wants, and no means to procure food, and that James had forbidden the grocers to trust her for the necessaries of life. The mother finally left the house, and is now living with a stepson a few doors from the house which for many years had been her home, and which James and his wife continue to occupy. It is charged in the bill that the deeds were procured by

fraud and undue influence exercised by James over his father, and that he has not kept his agreements, which were the real considerations for the deeds. Certain of the property has been sold and conveyed, and the only property now in controversy is lots 3, 9, 10 11, 12, 13, 14, 15, 20, 21, 22, 23, 24, 25, 26, 27, 28, and 29.

The court below set the deeds aside by a decree made March 14, 1891, so far as they affected the property last described, from which decree the defendant appeals

We have carefully examined the record, and think this decree ought not to stand. A will was made by James, Sr., January 28, 1888, which since his death has been duly proven in the probate court of Kent county, and from which no appeal has been taken. By the terms of the will the complainant Elizabeth is given the use for life of all this property. It appears that the property is vacant lots, from which no income could be derived by the widow. Her life-estate given by the will would not support her. We are not satisfied that such undue influence was exercised by James over his father that the deeds should be set aside, and the fraud charged in procuring the deeds is not proven. We are of the opinion, however, that James has not carried out the stipulation contained in the deed, and the understanding by which he was to have the title to all this property. He does not seem to have taken that care of his mother since the death of the father which it was agreed he should take. It was plainly contemplated by the parties that the mother should have a comfortable home in the house where she had lived so many years, kind treatment, and all the comforts of life furnished her. It is evident she has not had this, and that life with James and his wife is distasteful to her. It may be that her age and infirmities have in a measure brought about the estrangement between her and James' wife. Whatever have been the

causes, James has not kept his agreements in this regard; and, inasmuch as it is apparent that the parties cannot longer live in the same house, we regard the rights of Elizabeth there as paramount to those of James and his family.

The decree of the court below will be reversed and set aside, and a decree entered in this Court as follows:

1. That the complainant Elizabeth have the exclusive use of the house during her life-time.

2. That James pay to his mother the monthly sum of $20, to be paid on the 1st day of each and every month during her life.

3. That said sum be a first lien upon the lots and premises last described herein, in the nature of a mortgage.

4. That after the death of Elizabeth the title to the premises be confirmed in James as an absolute estate.

5. That a certified copy of such decree be recorded in the office of the register of deeds of said county of Kent.

No costs will be awarded.

MORSE, C. J., MCGRATH and GRANT, JJ., concurred with LONG, J.

MONTGOMERY, J. I think the decree below was right, and should be affirmed.